

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-14-00090-CR

SAMUEL DELEON GARZA, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 196th District Court
Hunt County, Texas
Trial Court No. 28,998

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Moseley

MEMORANDUM OPINION

A jury convicted Samuel Deleon Garza of burglary of a habitation. Garza pled "true" to the State's enhancement allegations and was sentenced to seventy-three years' imprisonment. On appeal,[1] Garza argues that the evidence is legally insufficient to support the jury's verdict. We overrule his point of error and affirm the trial court's judgment.

## I. Standard of Review

In evaluating legal sufficiency, we review all the evidence in the light most favorable to the jury's verdict to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Our rigorous legal sufficiency review focuses on the quality of the evidence presented. *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge "sets out the law, is authorized by the indictment,

---

[1] In companion cases 06-14-00088-CR, 06-14-00089-CR, 06-14-00091-CR, and 06-14-00092-CR, Garza appeals from four convictions of assault dating violence, with a previous conviction of assault family violence. In companion case 06-14-00093-CR, Garza appeals from a conviction of obstruction or retaliation.

does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id*.

A person commits the offense of burglary of a habitation if, "without the effective consent of the owner, the person: (1) enters a habitation . . . with intent to commit . . . an assault." TEX. PENAL CODE ANN. § 30.02(a)(1) (West 2011). The State's indictment alleged that Garza "did then and there intentionally or knowingly enter a habitation without the effective consent of MARIA ULLOA, the owner thereof, and commit assault against MARIA ULLOA." Garza does not deny the unlawful entry. Instead, he argues that the State's mistake in its indictment required it to show that an assault was actually committed and that there was no evidence that he "committed assault in the course of an unlawful entry."

## II. Legally Sufficient Evidence Supports the Jury's Verdict

The facts of this case are discussed in detail in our opinion in Garza's companion case, cause number 06-14-00093-CR, in which he appeals his conviction for obstruction or retaliation. Therefore, we discuss only the facts relevant to the determination of whether Garza committed the offense of burglary of a habitation.

Although Garza and Ulloa were dating, they maintained separate residences. The evidence at trial established that on the occasion giving rise to this conviction, Garza kicked down Ulloa's front door in the middle of the night. Photographs of the damaged front door were shown to the jury. According to Ulloa, Garza then broke into her locked bedroom and woke her from her sleep by hitting her in the face. Ulloa's young son, Michael (a pseudonym), testified

3

that he witnessed Garza push Ulloa into the bedroom door, causing her to fall back and hit her head on a hard surface. Michael ran to the neighbor's house, dialed 9-1-1, and informed the dispatcher that Garza had hit his mother's head on a door. Leigh Dixon, an officer with the Greenville Police Department, responded to Michael's call. Dixon testified that Ulloa was crying hysterically because she had been "woken from her sleep and assaulted." Photographs taken of Ulloa after this assault depicted Ulloa's freshly-bloodied face and scalp.[2] Dixon requested medical assistance for Ulloa.

We find this evidence legally sufficient to support the jury's verdict.

## III. Conclusion

We affirm the trial court's judgment.

Bailey C. Moseley
Justice

Date Submitted:     February 17, 2015
Date Decided:       March 10, 2015

Do Not Publish

---

[2]Garza argues that because he had previously assaulted Ulloa twice within a twenty-four-hour period, there was no evidence to suggest that the injuries to her face and scalp were new. However, police officers photographed Ulloa after each of Garza's assaults. A comparison of the photographs demonstrates that Ulloa sustained new injuries during the assault that followed Garza's break-in.

4